**2023 UT App 129**

# THE UTAH COURT OF APPEALS

SHAREE H. MILLET,
Petitioner,

*v.*

DEPARTMENT OF WORKFORCE SERVICES,
Respondent.

Opinion
No. 20220741-CA
Filed November 2, 2023

Original Proceeding in this Court

David J. Holdsworth, Attorney for Petitioner

Robert D. Andreasen, Attorney for Respondent

JUDGE RYAN M. HARRIS authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and
DAVID N. MORTENSEN concurred.

HARRIS, Judge:

¶1      Sharee H. Millet obtained unemployment benefits through the Pandemic Unemployment Assistance (PUA) program. Later, the Utah Department of Workforce Services (the Department) determined that she was not entitled to some of those benefits and, moreover, that she had obtained some of them fraudulently. Based on this determination, the Department ordered Millet to pay nearly $14,000, including a fraud overpayment penalty.

¶2      Millet attempted to administratively appeal this order, but an administrative law judge (the ALJ) and the Department's Appeals Board (the Board) each determined that Millet's appeal was untimely, and each rejected Millet's argument that she had good cause—cognitive impairments attributable to a traumatic brain injury—for not filing the appeal in a timely fashion. In addition, the ALJ and the Board each included cursory statements

indicating that, even if the appeal had been timely, they would have rejected it on its merits.

¶3 For the reasons that follow, we set aside the Board's determination that Millet's administrative appeal was filed late without good cause, and we instruct the Board to revisit the issue and more fully consider the implications of Millet's cognitive impairments on both (a) her ability to have filed her appeal on time and, if necessary, (b) her capacity to have formed the knowledge required for commission of fraud.

BACKGROUND

¶4 Millet is cognitively impaired, at least to some extent. The ALJ heard evidence that Millet "has documented . . . mental comprehension problems" due to a "brain bleed at birth" and a subsequent "traumatic brain injury" and that, as a result, her "memory is really bad." Based on this evidence, the ALJ made a finding that Millet, at some point, had sustained "a traumatic brain injury." And the Board made a finding that Millet "suffered a traumatic brain injury and has memory issues and difficulty dealing with legal matters." But the record contains little additional information regarding the severity of Millet's injury and the extent of her cognitive impairments. There is no indication in the record, for instance, that Millet has ever been adjudicated to be legally incapacitated. And the record indicates that—during the times relevant to this proceeding—Millet was working as "a teacher" at a daycare facility.

¶5 Indeed, in 2020, Millet was working at the daycare facility when the COVID-19 pandemic broke out. At that time, she reported to her employer that she had a weakened immune system and was at high risk for respiratory infections, and on this basis Millet decided to stop working and seek benefits under the PUA program. But due to her cognitive impairments, she was apparently unable to navigate the administrative process on her

own, and so—as she often did with matters of this nature—she sought the assistance of a friend and neighbor (Neighbor) who agreed to help her fill out an application for benefits.

¶6    Millet then filed for, and later received, unemployment benefits for an eleven-week period; in the application, she certified that she had not worked during this period. But it turned out that, for at least some of this time, Millet had picked up sporadic shifts at the daycare facility and had earned employment income. After learning of these discrepancies, the Department investigated and determined that Millet had "knowingly withheld material information or failed to report information in order to receive [PUA] benefits to which [she was] not entitled." Based on this finding, the Department imposed on Millet an overpayment and fraud penalty totaling $13,830.

¶7    On February 25, 2022, the Department sent Millet several letters detailing its findings and penalties. The letters also stated: "RIGHT TO APPEAL: You may appeal if you believe this decision is incorrect. Your appeal must be submitted in writing no later than 03/12/2022." Millet later testified that she never received these letters and that she did not learn of the Department's decisions until March 22, when she received collection letters from the Department. That same day, Millet texted Neighbor asking for assistance and sent him a photo of the collection letters.

¶8    Neighbor was out of town when he received Millet's text, and he did not return until April 4. On April 5, Neighbor helped Millet contact the Department by telephone. According to Millet, when she called the Department, an employee "told her that she could still appeal" the Department's order. Thereafter, with the help of her mother and Neighbor, Millet filed an appeal on April 8—seventeen days after receiving the collection letters.

¶9    A few weeks later, a telephonic hearing was held before the ALJ to consider Millet's appeal. Both Millet and Neighbor appeared at the hearing and addressed the ALJ. The ALJ's

questions were primarily focused on the timeliness of the appeal, and specifically on whether Millet could establish good cause for not filing her appeal on time. Two days after the hearing, the ALJ issued a written decision in which she determined that Millet's appeal was untimely and that Millet had not established good cause for her untimeliness. The ALJ acknowledged that Millet "had a traumatic brain injury" and that Millet receives assistance from others, including Neighbor, "with letters and legal matters." But the ALJ nevertheless determined that Millet could not demonstrate good cause for her untimely appeal because Millet and Neighbor "learned of the overpayment [order] and did not appeal within ten days" and "[t]hey could have researched and appealed within the ten days." *See* Utah Admin. Code R994-508-104(1) (providing that good cause may be shown where "the appellant received the decision after the expiration of the time limit for filing the appeal, the appeal was filed within ten days of actual receipt of the decision and the delay was not the result of willful neglect"). The ALJ did not analyze any other methods by which a claimant might demonstrate good cause, such as whether Millet's untimeliness had been caused by "circumstances beyond [Millet's] control" or by "compelling and reasonable" circumstances. *See id.* R994-508-104(2), (3). In particular, the ALJ did not assess whether Millet's cognitive impairments could constitute compelling or reasonable grounds for her late appeal.

¶10   After concluding that Millet's appeal was untimely, the ALJ included the following two sentences in its ruling regarding the ultimate merits of Millet's appeal: "Even if jurisdiction had been established, the result would have been the same. A full evidentiary hearing was conducted on the issue appealed, and based on the testimony and evidence presented the denial of benefits would have been affirmed." The ALJ again did not assess the role Millet's cognitive impairments might have played in her inaccurate application for benefits, and specifically did not assess whether Millet's condition might have impacted her ability to have the knowledge necessary for a finding of fraud.

¶11    Millet then appealed the ALJ's decision to the Board. Aside from one small correction not relevant here, the Board "adopt[ed] the remaining factual findings of" the ALJ. In particular, the Board found that Millet "suffered a traumatic brain injury and has memory issues and difficulty dealing with legal matters." Nevertheless, the Board affirmed the ALJ's determinations in all respects, and provided some additional analysis. The Board noted that Millet's appeal "was not filed within ten days after [Millet] learned of the decision," and the Board therefore concluded that Millet could not show good cause under the first of the three listed options in the administrative code. *See id.* R994-508-104(1). And the Board determined that, although it "sympathize[d] with [Millet's medical] condition," Millet "was not prevented from filing a timely appeal by circumstances outside her control" nor was she unable to file a timely appeal because of "compelling or reasonable circumstances," because "[f]iling an unemployment appeal only takes a few minutes, and [Millet] and her representative reasonably could have done so even while her representative was out of town." The Board therefore affirmed the ALJ's conclusion that Millet's appeal was untimely and was not excused by good cause.

¶12    Like the ALJ, the Board then also included a few sentences regarding the merits of Millet's appeal: "Even if [Millet] had good cause for the untimely appeal, the record shows she failed to accurately report her work and earnings for the weeks in question. [Millet] misreported her earnings and, as a result, received benefits to which she was not entitled. If the Board had jurisdiction over the merits of the case, it would affirm the overpayment and penalty." But this was the extent of the Board's analysis of the merits; like the ALJ, it did not assess the role Millet's cognitive impairments might have played in her inaccurate application for benefits, and specifically did not assess whether Millet's condition might have impacted her ability to have the knowledge necessary for a finding of fraud.

## ISSUES AND STANDARDS OF REVIEW

¶13    Millet asks this court to review the Board's determinations, and she raises two issues for our consideration. First, Millet challenges the Board's conclusion that she did not have good cause for filing an untimely appeal. Second, Millet takes issue with the Board's brief commentary about the merits of her appeal.

¶14    To the extent Millet is challenging findings of fact, "we are required to uphold [them] if they are supported by substantial evidence when viewed in light of the whole record before the court." *VanLeeuwen v. Industrial Comm'n*, 901 P.2d 281, 284 (Utah Ct. App. 1995) (quotation simplified), *cert. denied*, 910 P.2d 426 (Utah 1995). However, to the extent Millet is raising a legal challenge, "we review the Board's application or interpretation of a statute as a question of law under the correction-of-error standard." *Bingham v. Department of Workforce Services*, 2022 UT App 110, ¶ 21, 518 P.3d 626 (quotation simplified). As concerns our review of the Board's "application of the law to its findings of fact, we will uphold the Board's decision so long as it is within the realm of reasonableness and rationality." *Record v. Workforce Appeals Board*, 2011 UT App 340, ¶ 19, 263 P.3d 1210 (quotation simplified).

¶15    In particular, the decision as to "[w]hat constitutes 'good cause'" under administrative rules "presents us with a mixed question of law and fact," and in such matters "we defer to the informed discretion" of the administrative agency "and reverse only upon a plain abuse of discretion." *See Pacheco v. Board of Review*, 717 P.2d 712, 714 (Utah 1986) (per curiam). Likewise, "the Board's determination that [a claimant] committed fraud is a mixed question of law and fact that is more fact-like than law-like," and we therefore "grant more deference to the Board's decision" regarding fraud. *See Migenes v. Department of Workforce Services*, 2016 UT App 129, ¶ 2, 378 P.3d 116 (per curiam) (quotation simplified).

ANALYSIS

¶16 Millet's primary challenge is to the Board's determination that she did not have good cause to justify her untimely appeal. In particular, she asserts that there existed "compelling and reasonable" grounds—her cognitive impairments—for her failure to appeal in a timely fashion. *See* Utah Admin. Code R994-508-104(3). We agree with Millet that the Board's analysis with regard to good cause was infirm, for two reasons. First, the Board incorrectly considered the capability of Neighbor, who is not Millet's legal representative, to file an appeal on her behalf. And second, the Board did not assess the extent of Millet's cognitive impairments, and in particular did not make any determination as to whether Millet had carried her burden of demonstrating that her impairments are severe enough to constitute compelling and reasonable circumstances justifying a late appeal.

¶17 Under Utah's administrative code, a late appeal may be considered on its merits if the appellant can demonstrate good cause for the untimeliness. *See id.* R994-508-104; *see also Armstrong v. Department of Emp. Sec.*, 834 P.2d 562, 566 (Utah Ct. App. 1992) (stating that the claimant "must establish [that] the circumstances of her delay are 'compelling and reasonable'"). But under applicable rules, "[g]ood cause" is restricted to circumstances where a claimant can demonstrate that:

> (1) the appellant received the decision after the expiration of the time limit for filing the appeal, the appeal was filed within ten days of actual receipt of the decision and the delay was not the result of willful neglect;
>
> (2) the delay in filing the appeal was due to circumstances beyond the appellant's control; or

> (3) the appellant delayed filing the appeal for circumstances which were compelling and reasonable.

Utah Admin. Code R994-508-104.

¶18    Notably, each of these circumstances refers only to "the appellant"; thus, the inquiry is whether *the appellant's* circumstances constitute good cause. *See id.* Here, Millet—and only Millet—is the appellant. Nevertheless, after noting that "[f]iling an unemployment appeal only takes a few minutes," the Board concluded that Millet "and her representative reasonably could have" filed an appeal within ten days of receiving the collection letters, and that this could have happened "even while [Millet's] representative was out of town." The trouble with this analysis is that Millet has no legal "representative" for the purposes of her appeal.

¶19    While Neighbor did provide some assistance to Millet with regard to her appeal, there is no evidence that he was ever designated as her "representative" in any meaningful or legally binding way.[1] Neither the ALJ nor the Board made any finding that Neighbor had any relation or responsibility to Millet that would legally qualify his actions as those of hers. On this record,

---

1. There is some indication in the record that Millet, due to her apparent cognitive impairments, may have designated a "family member" as her "durable" power of attorney; during the proceedings before the Board, Millet offered to provide evidence establishing this, if necessary. A family member with power of attorney over Millet's affairs may or may not be the sort of representative who could be tasked with meeting deadlines on Millet's behalf; the Board makes no argument in this regard, and we offer no opinion on that question. But in any event, it is undisputed here that Neighbor was not the "family member" to whom Millet provided a power of attorney.

the evidence indicates that Neighbor was just offering, on a volunteer basis, to do what he could to assist Millet in navigating the administrative process; he had no responsibility, legal or otherwise, to assist with Millet's appeal. All responsibility for filing that appeal was Millet's alone. It is therefore irrelevant, for purposes of assessing whether Millet had "good cause," that Neighbor might have been able to complete the appeal faster or from an out-of-town location. Neighbor's capabilities should not have factored into the Board's analysis of whether Millet could demonstrate reasonable and compelling circumstances for her untimely appeal.

¶20 The Board's second mistake relates to its first, in that the Board did not fully engage with the impact Millet's undisputed cognitive impairments might have had on her ability to file a timely appeal. Specifically, the Board failed to assess the extent of Millet's impairments and failed to make a finding as to whether Millet had carried her burden of demonstrating that those disabilities were severe enough to constitute a "reasonable and compelling" reason for an untimely appeal. The Board specifically found that Millet "suffered a traumatic brain injury and has memory issues and difficulty dealing with legal matters." But the Board made no effort to analyze whether Millet's injury or mental impairments had any bearing on her failure to file a timely appeal. Instead, the Board simply found that "filing an appeal is not a complicated or lengthy process," and concluded that Millet "and her representative reasonably could have [filed an appeal] even while her representative was out of town." But, as already noted, whether Neighbor could have filed an appeal in a timely manner is irrelevant. It may be that Millet's cognitive impairments are not severe enough to constitute good cause for filing an untimely appeal, but the Board's findings do not indicate that it engaged substantively on that question.

¶21 Supporting its conclusion, the Board cited various cases, all of which involve factual scenarios that supported a determination

that good cause for filing a late appeal was not established.[2] But only one of those cases involved a situation in which the claimant asserted that a medical condition prevented the filing of a timely appeal. *See Dugdale v. Department of Workforce Services*, 2010 UT App 36U (per curiam). In *Dugdale*, the claimant was denied benefits and failed to file a timely appeal. *Id.* para. 2. According to the claimant, her appeal was untimely because she "suffered from depression." *Id.* para. 5. In determining whether the claimant's depression constituted good cause, the Board reviewed letters from her physician. *Id.* In the first letter, the physician indicated

---

2. *See, e.g.*, *Kirkwood v. Department of Emp. Sec.*, 709 P.2d 1158, 1158 (Utah 1985) (per curiam) (affirming the Board's finding that "stress due to family problems" did not excuse a late appeal); *Lockyear v. Department of Workforce Services*, 2011 UT App 236, ¶¶ 7, 9, 262 P.3d 451 (per curiam) (declining to disturb the Board's determination that good cause for filing a late appeal was not shown where the claimant alleged that his appeal was untimely because he required assistance from a family member who was experiencing medical issues during the appeal period); *Dugdale v. Department of Workforce Services*, 2010 UT App 36U, paras. 5–6 (per curiam) (affirming the Board's finding that good cause for filing a late appeal was not established where the claimant alleged her appeal was untimely because she "suffered from depression"); *Ayuso v. Department of Workforce Services*, 2009 UT App 274U, paras. 5–6 (per curiam) (affirming the Board's finding that good cause for filing a late appeal was not shown where the claimant alleged she was preoccupied with caring for her father); *Autoliv ASP, Inc. v. Workforce Appeals Board*, 2000 UT App 223, ¶¶ 13–19, 8 P.3d 1033 (concluding that good cause for filing a late appeal was not shown where the claimant's attorney argued he was confused by conflicting notices); *Armstrong v. Department of Emp. Sec.*, 834 P.2d 562, 567 (Utah Ct. App. 1992) (affirming the Board's finding that filing a late appeal was not excused where the claimant was confused as to whether "she had ten calendar days" or "ten working days" to appeal).

that the claimant suffered from depression, but the Board noted that no specific condition was identified as it related to the relevant time period. *Id.* And, according to the Board, "the letter was insufficient to establish that it was not within [the claimant's] control to file a timely appeal." *Id.* In the second letter, the claimant's physician wrote that he "did not believe that [claimant's] condition was so severe as to render her incompetent." *Id.* After evaluating the evidence presented, the Board did not find that the claimant's late appeal was out of her control or that her medical condition constituted reasonable or compelling circumstances justifying a late appeal. *Id.* para. 6. Thus, in *Dugdale*, we declined to disturb the Board's decisions because they were sufficiently supported by the record. *Id.*

¶22    The facts in *Dugdale* are similar to Millet's in that the claimants in each case alleged that the late filing of the appeal was due to health-related conditions. But the two cases are distinguishable. In *Dugdale*, the Board made findings regarding the impact of the claimant's medical condition on her ability to file a timely appeal, addressing and analyzing the two letters from her physician. *Id.* But here, even in the face of Millet's claim that her cognitive impairments affected her ability to file a timely appeal, and despite making a specific finding that Millet had "suffered a traumatic brain injury and has memory issues and difficulty dealing with legal matters," the Board made no findings about how, if at all, Millet's condition affected her ability to timely appeal. It is certainly conceivable that a claimant with severe cognitive impairments could demonstrate "compelling and reasonable" grounds for filing an untimely administrative appeal. On the other hand, a claimant who, despite a certain level of cognitive impairment, is high-functioning enough to competently navigate administrative procedures might not be able to make the required showing. The Board erred by not directly addressing Millet's argument that her cognitive impairments were, in her case, severe enough to constitute "compelling and reasonable" grounds for her untimely appeal.

¶23    For these reasons, we set aside the Board's determination that Millet had not shown good cause for her untimely appeal, and we instruct the Board to reassess that question. We express no opinion as to whether that question can be adequately reassessed using the existing evidentiary record, or whether additional proceedings would be appropriate.

¶24    Finally, in an effort to provide guidance that may become useful during reassessment, we briefly address Millet's complaint regarding the Board's cursory indication that, even if it had jurisdiction over Millet's appeal, it would have affirmed the denial of Millet's benefits on the merits. In particular, Millet asserts that—just as the Board did not take her cognitive impairments into account in assessing whether there existed good cause for her untimely appeal—the Board likewise did not take those impairments into account in imposing a fraud penalty.

¶25    We first note, as a preliminary matter, that Millet will not be able to challenge the imposition of the fraud overpayment if the Board determines, upon further review, that her appeal was untimely filed without good cause. Only if the Board determines that Millet has carried her burden of demonstrating good cause for her untimely appeal will the Board find it necessary to assess Millet's challenge to the underlying fraud penalty.

¶26    But in that event, the Board should take Millet's impairments into account in assessing whether she had the knowledge to have committed fraud. One of the three elements of "fraud," as that term is defined in our law, is that the claimant must have had "knowledge." *See* Utah Admin. Code R994-406-401(1)(b). Under the rule, "knowledge" is established if a claimant "kn[ew] or should have known the information submitted to the Department was incorrect or that he or she failed to provide information required by the Department." *Id.* In Millet's case, determining what she "knew or should have known" necessitates a more robust inquiry into the extent of her mental condition than

the Board engaged in. *See id.* To be sure, in most situations a claimant "is charged with knowledge" of facts "within the claimant's experience." *Adams v. Department of Workforce Services*, 2012 UT App 226, ¶ 28, 285 P.3d 781, *cert. denied*, 293 P.3d 376 (Utah 2012). And a claimant is usually "deemed to know the amount of and when . . . wages" were received. *Id.* But a claimant who suffers from sufficiently severe cognitive impairments might not have the capacity to know, or to remember, whether she was employed during a given time period. Thus, if the Board reaches the merits of Millet's challenge to the fraud penalty, it must engage with the question of whether Millet's impairments prevented her from having the requisite "knowledge" for a finding of fraud. *See* Utah Admin. Code R994-406-401(1)(b). On this matter—as opposed to on the "good cause" question—it is the Department that bears the relevant burden. *See Adams*, 2012 UT App 226, ¶ 22 ("To establish fraud, the Department must prove materiality, knowledge, and willfulness.").

CONCLUSION

¶27 The Board's analysis as to whether Millet had established good cause for her untimely appeal was erroneous, in two ways. First, the Board improperly factored into its analysis the capabilities of Neighbor, a volunteer who bore no responsibility to act on Millet's behalf. And second, the Board did not meaningfully engage with Millet's contention that her cognitive impairments were severe enough to constitute compelling and reasonable grounds for an untimely appeal. We therefore set aside the Board's determination that Millet had failed to show good cause for her untimely appeal, and we instruct the Board to revisit that question. And in the event the Board finds good cause for the untimely appeal, the Board should take those same cognitive impairments into account in assessing Millet's challenge to the Department's determination that Millet committed fraud.

———————